Our first case up this morning is 412-0717. Clayton v. Planet Travel Holdings, Inc. Show appearance of Mike Costello for the appellant. Appearance of Lisa Petrilli. Pronounce correctly. Perhaps Lee. Mr. Costello, you may proceed, sir. Thank you. May it please the Justices, Ms. Pirelli. Counsel. This case, two simple issues. Whether or not the attorney's fees were an abuse of discretion awarded against a defendant in a civil case. And secondly, whether the judgment rendered against the defendant individually was proper when a corporation had been formed and there were some successive corporations. Basically, the facts are simple. Planet Travel, Inc. was the corporation engaged in vacation tours and travel plans for individuals. The Claytons made an arrangement for travel and made an initial downstroke of $5,000. The defendant never made the defendant corporation and fewer the CEO who the judgment was rendered against individually. Never made arrangements. He used the $5,000 to pay some personal bills and he also used the money to pay for trips that he had received money for and had not paid. So how come he's not in jail, Mr. Costello? Instead of your arguing on his behalf to give him back some money? Only after his attorney's fees are out. Oh, okay. The plaintiff's filed suit under a breach of contract basis and under the Consumer Fraud Act. The court awarded judgments ultimately in attorney's fees of about $32,000. The judgment that was rendered for the repayment of the travel monies that the Claytons had forwarded to the defendant was approximately $6,000. So we have an attorney's fees five times the amount of the judgment. We would suggest that the court abuse its discretion in awarding that. Counsel, would it be fair to state that the reason we have large attorney fees is because of the shenanigans your client engaged in, in drawing this out and representing things to the plaintiff and not following through on those things? I would like to avoid that question, Your Honor, but yes, he was characterized as disingenuous by the trial court in his testimony. And guilty, court found him guilty of that offense. However... He always loved his mother? She didn't testify, Your Honor. Well, I just assumed that would be a mitigating factor. But we would suggest that the amount of fees, and we've listed the factors, and we both agree on the factors for reasonable attorney's fees. We just suggest that the court abused its discretion in awarding that amount of attorney's fees. Generally speaking, in contract actions, the losing party doesn't have to pay attorney's fees. A losing party to the winning party. They never went to arbitration as provided by the contract, but I would presume both parties waived because the defendants didn't raise it, nor did the plaintiffs. I'm not quarreling with the integrity of the attorney's statement of services, Your Honors. They did the work. It was proper, billing, however, we just feel it's overkill to keep going on with all this stuff. There's no dispute that the time was spent by Ms. Borrelli's firm or Ms. Borrelli herself. It's just they have to be reasonable, but they're in the court's discretion. Only if the court abused its discretion on attorney's fees, that's the standard of review, will the case, will it be reversed. Sometimes attorneys have to eat fees for all the work they've done. We suggest that... The initial bill, wasn't it going to be $53,000? Yes, I believe $59,000, and it was dropped to $32,000. The other point that the defendants make is that the court had ordered a judgment against the corporations and Donald Fuhrer, the CEO and president of the corporation. And we suggest that he is not liable. That Plan of Travel Group Inc., the corporation in effect when the travel plans were made, was organized in 1999. It was dissolved on February the 8th, 2008. And then he instituted a new corporation in Nevada, which took over in March of 2009. The complaint was filed in this case, the initial complaint, on October 30th, 2008. Simply put, the corporation should have the judgment against him and not Fuhrer individually. Even though it was dissolved, the statute provides for five years to sue the corporation. They never pierced or sought to pierce the corporate veil, they just kept the action against Fuhrer individually. When we suggest, based on corporate law, he is insulated from the judgment, and therefore it should be against the corporation only, as to attorney's fees. The judgment, by the way, was $5,000, for $6,000 it's been paid. Let me ask you this. According to Vernon v. Schuster, when we look at the four exceptions to the general rule that the person is not personally liable if it's a corporation, isn't it accurate that you have two of those possible factors that would apply in this case, one being where the purchaser is merely a continuation of the seller, and the second one being where the transaction is for the fraudulent purpose of escaping liability? Don't both of those apply to this case? Yes, but I would suggest, your honor, that it applies to the corporation, not the individual. You go against the assets of the corporation. I've stated all I can with what I have, your honor. If there are no questions, I rest. I see none, counsel. Thank you. Ms. Petrilli? May it please the court. Counsel. Justice Stegman, Justice Polk, Justice Holder-White. Again, my name is Lisa Petrilli, from the law firm of Sorling Northrop, and I'm here on behalf of the plaintiff's appellees, Gary and Marsha Clayton. As the defendant has argued that he sees only two issues, I'll address those two issues first, and then there are a couple of other issues that, because this court, the standard of review is de novo, that I would at least like to address, and this court can consider those issues without deference to the trial court's decision. With regard to the amount of attorney's fees, which it seems that that is the defendant's only problem, they don't seem to be arguing that the Consumer Fraud and Deceptive Practices Act didn't apply here or that that judgment wasn't proper. They are simply arguing that because the amount of the fees was approximately $32,000, the amount of judgment was $5,994.32, that somehow that amount of fees is per se unreasonable. And that is contrary to the law as stated by the Supreme Court as well as by this court in the Grove case that is cited in my brief. The Illinois Supreme Court has held that without the ability to recover attorney's fees, even in cases where the attorney's fees far outweigh or far exceed the amount of judgment, that the protections of the Act would be illusory. And in fact, that's why the Act provides for such fees, because a lot of times in these consumer fraud matters, the amount of judgment or potential judgment is relatively low. But where attorney's fees are going to exceed that, it is important that they be awarded so that consumers aren't discouraged from filing such complaints against unscrupulous business people such as you would argue the defendant in this case. And indeed, as I said, this court has agreed that to hold otherwise would in fact discourage injured parties and would be counterproductive to the very purpose of the Consumer Fraud and Deceptive Business Practices Act. And while it's easy for the defendant to say that this judgment was only for the approximate $6,000, it wasn't. In fact, we were protecting more than just the $6,000. We were protecting the additional amount that the plaintiffs had already paid and had been credited not because the defendant did anything, but because Visa credited their account. And so what we were really protecting was about $11,600, not just the $5,994 that we were awarded. And that's part of the reason why the trial court found that the defendant had acted in bad faith. At the trial, he had admitted to attempting to scam the Claytons out of their Visa credit by submitting false checks to Visa in the amount of $5,619. He then tried to submit those checks to the Claytons with restrictive endorsements, used the same check to try and get the Visa credit overturned. So at some point, the Claytons, if they had, I guess, succumbed to his settlement offers, would have still been out almost the exact same amount. And in order to protect, like I said, the credit as well as to obtain the amount that the Claytons had already paid and not received back, we had to go forward with this case. Counsel, if I understood your comment earlier, you made some reference to our de novo review. What are we reviewing here, de novo? Well, there were a couple of other issues that were raised in the defendant's brief that he did not address here. And it was actually unclear whether or not he took issue with the contract interpretation itself or the issue was that the court improperly, or it was an abuse of the discretion, to award that amount of fees for breach of the contract. And it's my understanding that contract interpretation is subject to this court's de novo review, as stated in the Erlenbush opinion. That doesn't seem to be what he's arguing today. But there was an issue in the contract that was prepared by the defendants that contained also a list of terms and conditions that the defendants had prepared. And one of those terms and conditions included a section on attorney's fees if there was a dispute. The section doesn't mention proceeding to trial, but instead says that any disputes have to be handled by mediation and then arbitration. Neither party sought mediation or arbitration, and the defendants never brought that up or, again, sought mediation or arbitration. Thereby, they waived that. And our claim is that even though the contract doesn't specifically mention attorney's fees at the trial court, or if it proceeds along that route, that attorney's fees are still proper under this contract. You'd be happy to have us find attorney fees proper under the Consumer Fraud Act anyway. That's correct. That's correct. It was an alternative under the order of the court on both counts. And we're just seeking to protect the award under both counts. The other issue that was de novo, which he didn't bring up, that is your review of whether there would be any agreements that our firm has with the Claytons are protected by attorney-client confidentiality. It's our position that agreements and discussions that we have had with our client about this matter are, in fact, protected by the privilege. The defendants seem to believe that I or that our firm can somehow waive that privilege on behalf of our client, but it's the client's privilege itself to waive. And here, if every time that you sought attorney's fees, you were required to divulge confidential communication between the attorney and the client, it's going to discourage consumers in this case from seeking those fees if they know that there's the potential that they could be forced to disclose confidential communication. And that shouldn't be the choice that a party has to make. Either they can seek fees and disclose, or they can waive their right to seek fees and not have to disclose those agreements. And so we would argue that the trial court's decision to prevent us from having to disclose certain agreements with our client was proper in this case. With regard to the defendant's argument that Mr. Feener should somehow not be held personally liable, the facts are a little bit different than they were stated. Planet Travel Group Inc. was incorporated in 1999, and it continued to operate until it was involuntarily dissolved in February of 2008. Now prior to that, in December of 2007, just as Mr. Feener became aware that he could be subject to liability to the Claytons for these amounts, he transferred all of the assets from Planet Travel Group Inc., of which he was the shareholder, to himself for $1. So at that point in December 2007, Mr. Feener personally was operating Planet Travel, under the names Planet Travel Group and Planet Travel Holdings, even though Planet Travel Group no longer had any assets, and Planet Travel Holdings had not yet been formed. He continued to do this throughout all of 2008 and into 2009, where the business operated out of the same location by Mr. Feener, with the same checking accounts, the same address, everything was exactly the same as it had been under Planet Travel Group. In 2009, he did eventually form Planet Travel Holdings, of which he is also the sole shareholder, and he formed that corporation in Nevada, and registered it to do business in Illinois in April 2009. At the trial, the defendants conceded that judgment against Planet Travel Holdings is proper, but we believe that it's also proper against Mr. Feener individually, as the two exceptions that Justice Holder White pointed out in the Vernon case, that Mr. Feener individually operating Planet Travel was a continuation of Planet Travel Group. Planet Travel Holdings Inc. then became a continuation of Mr. Feener individually. They were all the exact same person, attempting to shield himself, you know, eventually in 2009 from liability, after this case had been pending, knowing that liability was likely imminent. And in fact, at the trial, Mr. Feener offered no evidence, no testimony, and admitted to owing the $5,994.32. Additionally, with the last exception under Vernon, selling all of the assets of the corporation for $1 to himself, was a way for him to attempt to escape liability to Gary and Marsha Clayton. It's only because he didn't properly form Planet Travel Holdings Inc. or anything until later, that he operated that individually, but the purpose was so that he could avoid liability and try and shield any assets that Planet Travel Group had from the Claytons and try and prevent them from obtaining the refund of the amount that they were due. Those are two exceptions where individual liability will be assessed, and in this case, we believe certainly should be assessed, and certainly don't feel that the defendants have shown any facts which would show that the trial court in any way abused its discretion in the amount of the award or that the decision to award the amount individually against Donald Feener was against manifest weight of the evidence. In conclusion, as stated in the defendant's brief, this should have been a simple case, and we shouldn't have had to have spent this exorbitant amount on fees, given that, not anything to do with the plaintiff's actions, but given that the defendants admitted, and at all times admitted to owing the amount,  they constantly avoided complying with discovery requests, which resulted in multiple rules of judicial cause that were issued at the trial court. They moved to continue this matter at every junction possible. We claim they actually offered to settle for the amount that was owed without asking for fees. That's correct, and they refused to, and the reason why that was refused is because the amount that they were actually owed was the $5,994.32, but the defendant wanted to make sure that any check that they got to us was for the $5,619 so that they could use that to try and reverse the visa credit. So that was the only reason why at that point they refused to settle, and we were forced to proceed with the litigation. And again, even when we finally did get to trial, which was about three years later from when we filed the complaint, they introduced no evidence and admitted to owing the amount. Immediately following that, plaintiffs then filed multiple motions to vacate and to reconsider, and in those motions included the amount that they admitted to owing at trial. So again, just continuing to delay this matter, the hearing on fees that was eventually had wasn't had for another year after judgment was entered because of the constant motions to vacate, which leads me to there was one issue that the defendants kept pointing out in their brief that we somehow set a hearing without notice. The notice is in the record, despite being left out of the appendix for some reason at pages 997 and 998. We provided it to, there was another attorney involved prior to Mr. Costello's involvement with this. Notice was properly provided. The trial court did end up vacating that award so that Mr. Costello could have the opportunity to argue. Again, that didn't happen until nearly a year later because of multiple motions to continue by the defendants who claimed that the defendant himself couldn't be there, yet miraculously when those motions were finally denied, he was there at the hearing. So we would suggest that it certainly wasn't abusive discretion for the court in this matter considering the actual wrongdoing of the defendant, the unfairness of the defendant's actions, as well as the adversarial nature of this action as pursued by the defendant. It's certainly the amount of fees in this case are not unreasonable and are supported by Illinois Supreme Court law as well as the law of this circuit and other circuits in this court. Thank you, counsel. Thank you. Mr. Costello, any rebuttal, sir? As to the point she raised about the confidentiality, when they sought attorney's fees, the defendant wished to know the fee agreement between the plaintiff and the firm. And that's important to you because what? It is important to determine whether or not it's an indemnity statute. And you have standing for that because what? I believe, Your Honor, that any time you raise attorney's fees, confidentiality is waived. And what case stands for that proposition, Mr. Costello? Well, there are a myriad of divorce cases, Your Honor, that stand for that proposition. And frankly, I think the defendant's put at a disadvantage when he doesn't know the fee agreement of the plaintiff. So in addressing my discretion as trial judge and whether attorney fees should be awarded because of your client's misconduct, I have to probe into their attorney-client relationship and decide what their fee arrangements are? Is that your position? Yes, Your Honor, for this reason. I'm glad we have an opportunity to address it and reject it, Mr. Costello. Oh, thank you, Your Honor. So there will be no further wondering about what the law is at that point. But I do think it's unfair that if you're having to pay attorney's fees, you ought to know what the fee agreement is between the parties. Last point. As to Donald Fuhrer, he continued to operate at the same location after the Planet Travel Group Inc. was dissolved. And then he transferred the assets, as stated by Consul, for assets above sale for $1 to Planet Travel Holdings Inc. The Nevada Corporation, which was not incorporated for some time. Our suggestion is that he didn't take these assets personally, and therefore he is not liable. You can trace and follow the assets to the new corporation, which is Planet Travel Holdings Inc. Thank you, Your Honor. Thank you, Counsel. We'll take this matter into advisement and be in recess for a few moments.